IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SUZETTE N. B., | CV 19-51-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

I. **Procedural Background**

Plaintiff filed an application for supplemental security income benefits on April 14, 2015, alleging disability since May 18, 1992 (Doc. 6 at 176-77). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 6 at 29-46). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated January 30, 2018, the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II. <u>Legal Standards</u>

### A. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th

Cir. 2006)).

**B.      Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§

404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   <u>Discussion</u>

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 14, 2015, the date her application was filed.[1] At step two, the ALJ found that Plaintiff had the following severe impairments: gastrointestinal dysfunction related to incisional hernia, pancreatitis, takedown of colostomy related to prior bowel resection related to perforation and ulcerative colitis, constipation/diarrhea, factor V Leiden mutation, paroxysmal atrial

---

1 Because supplemental security income benefits are not retroactive, the relevant time period begins with the date of the application.

fibrillation ("A-fib"), generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"). (Doc. 6 at 31). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 6 at ).

The ALJ then found that Plaintiff had the residual functional capacity to perform a reduced range of light work with several restrictions to account for her physical and mental functional limitations. (Doc. 6 at 37). At step four, the ALJ determined that Plaintiff had no past relevant work. (Doc. 6 at 44). Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (Doc. 6, at 44-45).

Plaintiff argues the ALJ's decision is not supported by substantial evidence and raises four issues on appeal.[2] First, Plaintiff maintains the ALJ erred by not giving more weight to medical opinion evidence provided by treating physician Dr.

_____

[2] In her reply brief, Plaintiff argues her statement of facts should be taken as true and asks the Court to reject the Commissioner's substantive arguments because his response brief does not a statement of facts relevant to the issues submitted for review as required by Local Rule 78.2(b). (Doc. 16 at 2). The Commissioner's brief complies with the substantive requirements of Local Rule 78.2(b). Thus, the Court will address the issues presented on the merits.

Sarah Huddleston. Second, Plaintiff argues the ALJ failed to give germane reasons for discounting the opinion of licensed clinical social worker Mavis Vaillancourt. Third, Plaintiff maintains the ALJ did not provide sufficiently clear and convincing reasons for discrediting her subjective symptom testimony. Finally, Plaintiff argues the ALJ erred by relying on vocational expert testimony elicited in response to an incomplete hypothetical question. The Court addresses each argument in the order set forth below.

### A. Medical Opinion Evidence

Plaintiff argues the ALJ erred by discounting the opinion of treating physician Dr. Sarah Huddleston in favor of opinions provided by the non-examining state agency physicians.

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it is entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's opinion is not entitled to controlling weight, the ALJ considers several factors in determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors include the "[l]ength of the treatment relationship and the frequency of the examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant to the ALJ's evaluation of any medical opinion, not limited to that of a treating physician, include: (1) the supportability of the opinion; (2) the consistency of the opinion with the record as a whole; (3) the specialization of the treating or examining source; and (4) any other factors that are brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527, 416.927.

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester,* 81 F.3d at 830 (9th Cir. 1995).

To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Since 2013, Plaintiff has been treated by several different medical providers at the Cabinet Peaks Medical Center for a variety of ailments. (Doc. 6 at 359-455; 618-714; 972-996; 1034-1071; 1137-1183). One of those providers is Dr. Huddleston, a family medicine practitioner who saw Plaintiff for the first time in January 2017. (Doc. 6 at 1165). Dr. Huddleston noted that the reason for Plaintiff's visit was to establish care with a physician as she had applied for disability benefits. (Doc. 6 at 1165). Dr. Huddleston observed that Plaintiff had a "complicated medical history with multiple issues as well as severe anxiety and PTSD," had been seeing a counselor, and was also being treated by a gastroenterologist and a rheumatologist. (Doc. 6 at 1165). Dr. Huddleston saw Plaintiff five times over the course of the next six months. (Doc. 6 at 1167, 1169, 1177, 1182, 1279).

On July 25, 2017, Dr. Huddleston indicated she would be willing to write a letter in support of Plaintiff's disability application stating that due to her "various mental health and physical health issues she is likely not able to fulfill the requirements of a full time or part time job at this time." (Doc. 6 at 1134). At a follow up appointment on August 4, 2017, Dr. Huddleston wrote that "[b]etween [Plaintiff's] numerous physical health and mental health issues, in my opinion, she is not able to hold a job at this time." (Doc. 6 at 1281).

Plaintiff argues the ALJ erred by not giving Dr. Huddleston's opinion more weight, and devotes several pages of her opening and reply briefs to simply listing medical evidence that she contends supports Dr. Huddleston's assessment and shows she is not able to work. (Doc. 14 at 7-27; Doc. 16 at 4-8). The administrative record in this case is expansive, and contains roughly 1,000 pages of medical records. (Doc. 6 at 359-1314). Given Plaintiff's lengthy treatment history with several medical providers, it is not surprising that the contains conflicting medical evidence. As always, the ALJ is responsible for resolving conflicts and weighing the medical evidence. See *Tommasetti v. Astrue*, 5333 F.3d 1035, 1041 (9th Cir. 2008); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

In doing so here, the ALJ expressly considered Dr. Huddleston's opinion that Plaintiff was not able to work. Dr. Huddleston's opinion conflicts with the

opinions of the state agency consultants, who identified physical and mental limitations consistent with the ability to perform a range of light work. (Doc. 6 at 183-88; 197-203). In light of these conflicting opinions, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Huddleston's opinion.

The ALJ articulated two reasons for giving minimal weight to Dr. Huddleston's opinion that Plaintiff was unable to work. First, the ALJ found Dr. Huddleston's opinion was not consistent with the objective findings set forth in her own treatment notes and notes by other providers at the Cabinet Peaks Medical Center. (Doc. 6 at 43). The ALJ's decision contains a detailed summary of the medical records, including Dr. Huddleston's treatment notes. The ALJ pointed out that when Plaintiff contacted Dr. Huddleston's office in January 2017 requesting a letter stating that she was disabled, Dr. Huddleston remarked that she "would have needed to do a functional capacity form for her." (Doc. 6 at 1134). Presumably because she had not performed functional capacity evaluation, Dr. Huddleston indicated the "best [she] could do at the moment" was to write a letter stating Plaintiff was likely not able to work and did not specifically assess Plaintiff's physical or mental limitations. (Doc. 6 at 1134).

The ALJ further observed that Dr. Huddleston's treatment records contained generally unremarkable physical examination findings. (Doc. 6 at 43). In

particular, the ALJ noted that on physical examination, Plaintiff's head, eyes, and neurological systems were consistently normal (Doc. 6 at 43, 1165, 1167,1169, 1177, 1182,1179, 1281). And with respect to Plaintiff's gastrointestinal impairments, the ALJ cited records from other providers at the Cabinet Peaks Medical Center documenting "frequently normal or manageable gastrointestinal/gastrourinary symptoms." (Doc. 6 at 43).

The ALJ agreed that Plaintiff had a number of severe gastrointestinal impairments, including pancreatitis and diarrhea, and thoroughly discussed the medical records from Plaintiff's health care providers at the Cabinet Peaks Medical Center, including Dr. Huddleston, in her decision. (Doc. at 34-35, 39). These records reflect that Plaintiff has a lengthy medical history, has undergone multiple abdominal surgical procedures, and reported varying degrees of abdominal pain or discomfort. (See e.g. Doc. 6 at 391, 1040, 1186-88, 1195, 1207). Typically, however, Plaintiff's treating providers at the Cabinet Peaks Medical Center identified no abnormal gastrointestinal examination findings. (See e.g. Doc. 6 at 366, 372, 382, 385, 386, 1238,1244-45). The ALJ permissibly discounted Dr. Huddleston's opinion in part because it was not consistent with treatment notes from other providers at the Cabinet Peak Medical Center reflecting that Plaintiff's gastrointestinal symptoms were managed with medical intervention and treatment.

As for Plaintiff's psychological symptoms, the ALJ noted during her discussion of the medical evidence that Plaintiff appeared anxious, depressed, sad, and tearful during her first visits with Dr. Huddleston in January and February 2017, but demonstrated good insight and judgment and full-ranged mood and affect during her subsequent appointments in March, April, and July 2017. (Doc. 6 at 40, 1165, 1167, 1169, 1177, 1182, 1279). While Plaintiff appeared anxious and tearful again at her appointment on August 4, 2017, Dr. Huddleston noted this was because she feared she would not qualify for disability benefits and was discouraged by her administrative hearing in front of the ALJ which had taken place two days earlier. (Doc. 6 at 1281). The ALJ reasonably found Dr. Huddleston's opinion that Plaintiff could not work due to "her numerous physical health and mental health issues" was not consistent with the objective findings contained in her own treatment notes.

Second, the ALJ assigned limited weight to Dr. Huddleston's opinion because she did not include a function-by-function assessment of Plaintiff's abilities and did not identify any limitations based on objective findings. An ALJ need not accept a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). See also

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Dr. Huddleston did not provide any explanation for her opinion, and did not refer to any medical records or treatment notes to support her statement that Plaintiff was not able to work. Dr. Huddleston did not perform a functional capacity evaluation or identify any objective findings demonstrating that Plaintiff's mental and physical limitations were so severe that she would be precluded from working. The ALJ permissibly discounted Dr. Huddleston's conclusory opinion because it did not identify any limitations based on objective findings, which meant it was of little value in assessing Plaintiff's specific functional limitations. See *Batson v. Comm'r of Soc. Sec. Admin.* 359 F.3d 1190, 1195 (9th Cir. 2004) (explaining that an ALJ need not accept a treating physician's opinion "it that opinion is brief, conclusory, and inadequately supported by clinical findings"). Moreover, Dr. Huddleston's conclusory statement that Plaintiff was unable to work was not entitled to significant weight because the ultimate issue of disability is reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d), 416.927(d)(2). See *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The Court concludes the ALJ provided sufficiently specific and legitimate reasons for discounting Dr. Huddleston's opinion.

In finding Plaintiff capable of a limited range of light work, the ALJ relied instead on the opinions of state agency physicians Dr. Martin Rubinowitz and Dr. Mark Dilger, who reviewed the medical records in March 2016 and completed physical and mental residual functional capacity assessments. The ALJ gave their opinions significant weight and accounted for the limitations they identified in the residual functional capacity assessment. These non-examining medical source opinions are supported by and consistent with other evidence in the record and constitute substantial evidence in support of the ALJ's finding that Plaintiff was not disabled. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.")

## B.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting her subjective testimony.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged."
*Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two
the ALJ may discredit the claimant's subjective symptom testimony about the
severity of his symptoms "only by offering specific, clear and convincing reasons
for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met her initial burden because she
produced evidence of medically determinable impairments that could reasonably
be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's
subjective statements concerning the intensity, persistence and limiting effects of
her symptoms were not entirely consistent with the medical and other evidence in
the record. (Doc. 6 at 38).

At her administrative hearing, Plaintiff testified that she could that could lift
or carry no more than ten pounds in each hand, could not crawl, kneel, crouch, or
fully bend/stoop, and had difficulty reaching overhead. (Doc. 6 at 147-150).
Plaintiff said she had no problems with standing, but could not walk more than 50
yards without having to stop and sit down. (Doc. 6 at 147). Plaintiff further
testified that her medications make her drowsy and she often naps for three to four
hours after lunch. (Doc. 6 at 151-52). Plaintiff also completed function report in
which she stated that she did not like being around crowds, had to lie down for

approximately thirty minutes every two hours due to abdominal cramps, and could only pay attention for two to five minutes at a time. (Doc. 6 at 295; 300-301).

The ALJ discounted Plaintiff's subjective testimony in part because her daily activities suggested her pain and limitations were not as severe as she alleged. (Doc. 6 at 44). Contrary to Plaintiff's allegations of disabling physical limitations, including the inability to lift more than ten pounds or walk more than fifty yards without having to sit down, the ALJ found that Plaintiff was "generally quite functional" on a daily basis. (Doc. 6 at 44). For example, the ALJ observed that Plaintiff performed a variety of household chores, including vacuuming, washing dishes, laundry, preparing meals, and sometimes even fence repair. (Doc. 6, at 38, 44, 156-158). The ALJ also pointed out that Plaintiff took care of her five dogs, went shopping once per month, went out to eat about once a week, attended frequent medical appointments, was able to drive, and even assisted her son on hunting trips by driving on logging roads. (Doc. 6 at 38, 44, 152-54, 158). The ALJ found it notable that in March 2016, Plaintiff reported to one of her treating physicians that had gotten stuck for several hours while driving in the mountains. She described feeling tired and sore after having to pull a tree out of the road and cut it with her leatherman, which took her seven hours. (Doc. 6 at 40, 901). And while Plaintiff stated she could not pay attention for more than two to five minutes

at a time, the ALJ noted that Plaintiff played online games, including Yahtzee, and used her I-Pad to maintain contact with her friends. (Doc. 6 at 38, 44). The ALJ reasonably found these daily activities were not entirely consistent with Plaintiff's allegations of disabling physical and mental limitations. See *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (an ALJ may discount a claimant's subjective testimony when the claimant's activities "are incompatible with the severity of symptoms alleged"); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may discredit a claimant's subjective complaints based on inconsistencies between the claimant's described limitations and claimant's activities of daily living).

The ALJ further found that Plaintiff's allegations of disabling pain and limitations were not entirely consistent with the objective medical evidence. (Doc. 6 at 38). The ALJ discussed records reflecting that Plaintiff had intermittent cardiac and gastrointestinal problems, which could account for some weakness and discomfort, but her symptoms improved with treatment. (Doc. 6, at 38). For example, the ALJ noted that Plaintiff was hospitalized for a few days in January 2016 due to cardiac conditions, including atypical chest pain and atrial fibrillation, but was discharged a few days later with instructions to resume her home medications and normal activities. (Doc. 6 at 38, 836-867). September 2016 chest

x-rays showed no active cardiopulmonary process, and by February 2017 her atrial

fibrillation was well controlled on medication. (Doc. 6 at 38, 1271). The ALJ

permissibly discounted Plaintiff's testimony in part because it was not consistent

with the medical evidence. See *Carmickle v. Comm'r, soc. Sec. Admin.*, 533 F.3d

1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient

basis for rejecting the claimant's subjective testimony."); *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001) ("medical evidence is still a relevant factor in

determining the severity of the claimant's pain and its disabling effects").

To the extent the ALJ accepted Plaintiff's allegations, she accounted for her

functional limitations by restricting her to a range light work with several physical

and mental restrictions. Specifically, the ALJ accounted for Plaintiff's PTSD and

anxiety by limiting her to unskilled work and finding that she could have only

occasional interaction with supervisors, coworkers, and the public; could do no

work in tandem with supervisors or coworkers; and could not work directly with

the public. (Doc. 6 at 37). The ALJ further accounted for Plaintiff's physical

impairments by limiting her to light work, and the jobs she found Plaintiff capable

of performing at step five required no crawling, kneeling crouching or stooping.

(Doc. 6, at 45; Dictionary of Occupation Titles (DOT) 706.684-022 ("Small

Products Assembler"); DOT 369.687-018 ("Laundry Folder"). To the extent the

ALJ discounted Plaintiff's subjective testimony, the Court finds that the ALJ provided sufficiently clear and convincing reasons, supported by substantial evidence, for doing so.

### C.    Other Source Opinions

Plaintiff next argues the ALJ erred by not giving more weight to the opinion of her treating counselor, Mavis Vaillancort.

Ms. Vaillancort is a licensed clinical social worker who typically met with Plaintiff on a weekly basis during 2015 and 2016. (Doc. 6 at 715-745; 883-930). In August 2017, Ms. Vaillancort wrote a letter stating that Plaintiff was not able to work due to her severe PTSD and the resulting panic attacks she suffered in social settings. (Doc. 6 at 1136). Ms. Vaillancort wrote that Plaintiff was hypervigilant anytime she was in public and had "frequent and unpredictable panic attacks that render[ed] [her] incapacitated." (Doc. 6 at 1136). She explained that Plaintiff experienced "extreme reactions" when attending medical appointments, and could only manage "interactions with unknown males" with medication and by having her service dog with her at all times. (Doc. 6 at 1136). Ms. Vaillancort stated that she did not foresee Plaintiff "having the ability to interact with new employers and employees in a work environment now and quite possibly ever." (Doc. 6 at 1136).

As a licensed clinical social worker, Ms. Vaillancort is considered an "other medical source" rather than an "acceptable medical source." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). When an "other source" medical provider works closely with and under the supervision of an acceptable medical source, the other source opinion may be considered that of an acceptable medical source. See *Taylor v. Comm'r*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)). Here, there is no indication that Ms. Vaillancort was working with or under the supervision of a physician or other acceptable medical source. Thus, Ms. Vaillancort is considered an "other source".

Other sources are not qualified to give medical opinions but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. See 20 C.F.R. §§ 404.1513, 416.913.While an ALJ must provide specific and legitimate reasons based on substantial evidence for rejecting a controverted opinion from an "acceptable medical source," an "other source" opinion is not entitled to the same deference and may be discounted if the ALJ provides germane reasons for doing so. *Molina*, 674 F.3d at 1111-12.

The ALJ summarized Ms. Vaillancort's treatment notes and specifically addressed her August 2017 letter. (Doc. 6 at 40-41, 43). In particular, the ALJ discussed progress notes from August through December 2015 showing that

Plaintiff had developed a pessimistic attitude and was focused primarily on her physical problems, but was also working on coping skills to better manage her anxiety at home and in public. (Doc. 6 at 715-737). The ALJ also cited notes from a session in December 2015, during which Ms. Vaillancort observed that Plaintiff was ineffective at applying the coping skills she was learning and seemed more focused on getting disability benefits than in trying to find some way to make an income. (Doc. 6 at 716). Between January and May 2016, Ms. Vaillancort's notes reflected that while Plaintiff continued to have some anxiety, depression, and PTSD-related symptoms, she was making progress in applying her learned skills effectively, her self-esteem was improving, and she was becoming better at processing and regulating her emotions. (Doc. 6 at 883-900, 904, 915, 917, 919, 925).

The ALJ then considered Ms. Vaillancort's letter dated August 1, 2017, but gave it minimal weight because it was not supported by the evidence of record.[3] For example, while Ms. Vaillancort wrote that Plaintiff "frequent and unpredictable panic attacks that render[ed] [her] incapacitated" (Doc. 6 at 1136),

_____

3 The ALJ mistakenly stated that Ms. Vaillancort wrote this letter in August 2016. (Doc. 6 at 43). Because the record does not contain any additional progress notes from Ms. Vaillancort between August 2016 and August 2017, any error on the ALJ's part in mistakenly identifying the date of the letter is harmless.

the ALJ found there was no objective evidence of panic attacks in the record. (Doc. 6 at 43). Although Plaintiff described having severe panic attacks, she does not point to any objective evidence of panic attacks and it appears there is no such evidence in the record. As discussed above, the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective testimony. And contrary to Ms. Vaillancort's statement that Plaintiff often had "extreme reactions" at medical appointments, the ALJ found no mention of such reactions in the record. The ALJ further observed that Plaintiff frequently attended appointments with male medical providers with no mention of panic or having her service dog present. The ALJ reasonably gave Ms. Vaillancort's opinion little weight because it was not supported by the treatment record. See *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (recognizing that a conflict with treatment notes is a germane reason for discounting the opinion of an "other source").

The ALJ also discounted Ms. Vaillancort's statements because they were not consistent with Plaintiff's activities. Contrary to Ms. Vaillancort's letter stating that Plaintiff had frequent and unpredictable panic attacks in public and would not be able to interact with others in the workplace, the ALJ noted that Plaintiff testified that she eats out about once a week and goes shopping. (Doc. 6 at 43, 158, 160). The ALJ permissibly discounted Ms. Vaillancort's statements in part based

on evidence of Plaintiff's daily activities. See *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (recognizing that inconsistencies between an other source opinion and a claimant's daily activities is a germane reason for discounting that opinion).

Accordingly, the Court concludes the ALJ provided germane reasons for discounting Ms. Vaillancort's other source opinion.

### D. Vocational Expert

Plaintiff argues the ALJ's residual functional capacity finding and the resulting hypothetical question were incomplete, and the vocational expert's testimony consequently had no evidentiary value for purposes of demonstrating that other work existed in significant numbers in the national economy that Plaintiff could perform. She claims the ALJ's hypothetical question did not adequately account for all of the limitations identified by her medical care providers. (Doc. 14 at 35).

As discussed above, however, the ALJ properly discounted Plaintiff's subjective testimony and appropriately weighed the medical and other source opinion evidence in the record. To the extent the ALJ accepted that the Plaintiff's physical and mental impairments caused her pain and limitations, the ALJ took that into consideration in the residual functional capacity by limiting Plaintiff to a range

of light work. The Court finds that the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Plaintiff was not disabled at step five of the sequential evaluation process.

## IV.    Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 28th day of February, 2020

Kathleen L. DeSoto
United States Magistrate Judge